Good morning, Your Honors. May it please the Court, Wendy Lasher for the appellants. On the issue of appealability, there was no Rules 54 certification. Based on my understanding, therefore, there was no final judgment until all of the claims against all of the parties were adjudicated. And on that ground, I disagree with the appellee's claim that there was no timely appeal from the summary judgment in favor of the International. I have only one short assertion to make on the International's main contention that it was not liable for the Let me make sure that I understand some things. As I understand it, all that's correct, Your Honor. So we do not have claims at this point by all the plaintiffs? No. Well, one died and one settled. Which are the ones that are gone? Condon passed away, and Allen settled very recently. I wrote a letter to the Court about the Allen settlement. And Condon's estate is not continuing to litigate? No. So his claim is over? Hers, Your Honor. Hers. And Allen settled. Okay, so there are a number of plaintiffs left, but their claims against the local and against the Employers Association are what? Settled? Those are settled. So all that's left is the International? That's correct, Your Honor. Now, let me tell you what's on my mind. Sure. There's a problem with your case, so you can educate me. I can't see where the International has anything to do with who gets promoted to clerk or handles grievances about promotion to clerk or anything. It looks like this is just something purely between the local and the employers. The International had the duty to promote the employees, and of fair representation under the PCLCD agreement. Pardon? I'm trying to think whether that assumes the conclusion, whether they had a duty of fair representation of these people on this matter. Well, the International was the party to the agreement. The opening paragraph recites that the International signs this on behalf of the locals. Does that give the locals any right here to enforce this contract? Does it give the locals any right to enforce the contract? Well, as a practical matter, it was the locals who were doing it. I don't have the paragraph. The opening paragraph to the contract says, let's see, the International Longshore and Warehouse Union, on behalf of itself and each and all of its longshore locals in California, Oregon, and Washington. That's the opening recitation. Correct. Okay. So does the local have any rights here under this contract? Well, in terms of processing grievances and the like, absolutely. And the local did that. Is the local therefore to be treated as though it were a signatory to this contract? No. They don't have any rights to enforce this? Well, they may have, but they aren't here anymore. Well, I understand that they're no longer here, but that still is very relevant to the question as to whether you have a cause of action against an International that did not, in fact, appoint the members of the local joint board. Well, yes, Your Honor, because the International assumed the duty. The problem I have with the case is that the International is taking two positions at once. On the one hand, it's saying, we delegated everything to the local. We let the local handle it, so you can't blame us for what the local did wrong. And on the other hand, they're saying, we're not liable for anything they did because we delegated to them, even though we had an independent duty under this agreement to handle the case, to handle the grievance. As I understand it, the process, the dispute resolution process had three stages. Is that right? Correct. There was a sort of a, I'm just using my own terms here, there was sort of a local resolution, and then you could take it to an area, and then you could take it to the joint coast, which was the parent or the highest level of appeal. Did you appeal this all the way up? We didn't get that far, because they didn't process the grievances. Okay, so it was only taken to the local level. Could you have appealed that? At the stage of summary judgment. Could you have appealed that to the Joint Area Labor Relations Committee, which would be your right of appeal from there? If they had processed the grievance. You can't even complain that they didn't process the grievance by taking an appeal? Well, that's what this lawsuit was about, to complain that they didn't process the grievance. We were kind of stuck in this position. There was discrimination and favoritism in the hiring and the promotion, and then there were grievances, and then nothing happened. So we were forced to file a lawsuit. What would have happened if you had gone to the joint area and said they failed to process the grievance? They would have said, wait for the local to process the grievance. You can't take it to us yet, it's premature, it's not right. In fact, I think that's what they said to Mr. Corey. Did you try? No, I was not the lawyer. I don't mean you in terms of you personally. There's no record of that, Do you have the equivalent of a writ of mandamus or something that you can go and say, look, we can't get these guys to get off the dime. How can we file an appeal here when we can't get these guys to make a decision in the first place? You know, there may have been such a remedy, and I would have to give the court some support. The reason I ask that question is that it appears to me that the way that this thing sort of worked, in fact, is that the international did things at sort of a macro level, and it looks like the locals took care of appointing all the members of the joint port labor relations committees. And if so, the international never really had noticed that there was a problem here. The international had an, I contend that the international had an independent duty to assure that when it delegated its duties under this contract to the locals to take care of promotions and hiring and so forth, it had an independent duty to assure that the locals did so in a non-discriminatory way, and to say, well, gee, we didn't know what they were doing. Do you have some fact for that, or should we just? Language in the contract? That they had to do that? That's why I asked about the first paragraph, which says that the international was doing this on behalf of the locals. That's why I asked if the locals had a right to enforce this, because it certainly looks like, in practice, the locals dealt with all the problems at the local level, and the international dealt with all the problems at the national level. Well, Your Honor, it actually doesn't say quite the way Rory said it. It says, on behalf of itself, and each and all of its longshore locals. Right. So on behalf of itself, I submit that the language of the contract gave rise to a duty on behalf of itself, because it would be very Just sort of joining several liabilities? Yes. Yes, Your Honor, because it would be a very easy thing for an international union to say, well, you know what, we agree we're not going to allow any discrimination in hiring, but on the other hand, we'll look the other way at what our locals do. We'll let them take care of it so we don't have to think about it. That, I submit, is contrary to public policy, when you have elaborate series of labor laws, and you let an international union do that. If you didn't take an appeal to the joint area or to the joint coast committees, did anybody give them any kind of a notice that there was a problem here? By filing the lawsuit, Your Honor. Only by filing the lawsuit. What was the international supposed to do exactly? I mean, nothing was put before them. No reason to think, nothing in the briefs to suggest even, let alone the record, that they knew this was a lying, cheating, discriminatory local. What are they supposed to do? Supervise the way the locals conduct their business on a day-to-day basis. Let me give you a situation where I know for a fact that one body has authority to correct errors by another. And that is, we have authority to correct errors by magistrate judges and district courts and administrative agencies in the Ninth Circuit. It seems to me that you would be saying that we're not doing our duty. If errors are going on, we never know anything about them, nobody ever brings them to our attention, and we don't do anything about it. Is that a good analogy? Well, I think it is a good analogy, and perhaps not one the court would like to hear the answer to. Because I think that if you say, we have responsibility for this, and nobody complains, there still is a responsibility to look into what they're doing. So if there's some magistrate somewhere in our 40% of America's land mass who's not letting people out on bail when he ought to, even though it's never come to our attention, it's our fault. Well, it's not a good analogy because the court has a great deal of immunity in any event. Leave aside immunity. Maybe I could try a different analogy. How would we know to do something about it? What would we do? Presumably, if the court has supervisory authority, it actually has people from the court visiting the lower courts, checking in on the magistrates. If anyone complains, and then if there's a complaint, you might say, as we did in this case, it's time to do something about it. Anything else that would make the situation not analogous? Any other distinction between some wayward magistrate somewhere in, I don't know, Nevada, Hawaii, somewhere, and us, some difference between that and this local and the international? Yes, Your Honor. What's the difference? The court hasn't assumed a contractual obligation for the conduct, whereas this case is based the court's obligations to supervise are based on statute. Here we have a contract that says the international contracts on behalf of itself not to discriminate in the hiring and to operate the promotion and the assignment of workers under the terms of this contract. And what the international is telling the court here is, on the one hand, we fulfilled our duty that the contract imposes on us by delegating it to the local. And on the other hand, since we handed it off to someone else, it's not up to us to worry about how they do it. I think a better analogy than the one the court offered is how I run my office. If I assign my associate to draft a brief for me, and my associate files a brief and brings it to this court, and my opponent says, well, it was a frivolous appeal, and then my court calls me in and says, you should be sanctioned for letting your associate file a frivolous appeal, I don't think I can say, well, I delegated it to my associate, so I have no responsibility. Because I am the one whose name is on the brief. I'm the one who made the contract with the client. A malpractice case might even be a better example. Yes, you're right. That's why it never works to say I wasn't the lawyer at trial or I wasn't the lawyer at that stage of the procedure. Exactly. And I realize I said that, but that's only because I didn't know the answer to that point is that when one assumes a contractual obligation, it's quite different than a statutory obligation of supervision. And here the contract says the international contracts on itself not to allow favoritism or discrimination in hiring or employment. Trace it through this contract some. I see where they make the contract on behalf of itself and each of the locals. And I see where the contract says prohibit certain kinds of discrimination, like at 8.43 in certain situations. I'm not sure I see the language you want that says the international takes responsibility for seeing that this is done. Because I don't think one needs to say that throughout the contract. Is there a language? That's what the first paragraph of the contract says. Is there a language besides the first paragraph? No. Because it's assumed through the first paragraph. 8.43 says specifically there shall be no favoritism or discrimination in the hiring or dispatching or employment of any longshoreman qualified and eligible under the agreement. It doesn't say the local shall not discriminate or act in a favoritism way. It doesn't say the PMA. It says there shall be no. So I think that has to be read together with the first paragraph of the contract. This happens to be a very long contract. But if it were a two-page contract, I don't think the court would ever ask the same question, because obviously the duties under the contract would relate to the parties to the contract. Is there some provision here for how to enforce violations of 8.43 that would give us a better understanding of who is supposed to enforce them? Well, there is an entire grievance. There is an entire grievance procedure. But the duty of fair representation would be the duty of fair representation under the entire contract, not only the duty to handle the grievance procedure. The grievance procedures are in Section 17? Yes, Your Honor. And the Now, where is it in Section 17 that we can see that the International has some, has responsibility here? Let me get myself to that section. Well, that Section 17 is where the Joint Port Labor Relations Committee is created. And that is the place where the parties to the agreement have the duty to appoint, the duty of appointment. And the International said, I'll put the local will be my representative. It was a representative. In fact, it says, each of said Labor Relations Committees shall be comprised of three or more representatives designated by the Union and three or more designated by the Employers. Is there a definition that says the Union there means the International, not the local? I know that the practice was that the local does it. Go back to the very first page of the contract, where the Union is the International Long Shore and Warehouse Union, here and after designated as the Union. So the first paragraph of the contract defines the Union as the International, not as the locals. And in fact, it distinguishes between the Union and the Long Shore locals. So when paragraph 17.11 says the Union shall place, designate the representatives, those are the Union's representatives, not the locals. If this were remanded to the District Court, what would be the remedy that would, that you would be seeking? First of all, to, well, as a practical matter, at the very least, to reverse the summary judgment in favor of the Union and thus to reverse the cost award against my clients. It's mainly the cost and returning fees, isn't it? Well, the Union, my clients still have damage claims to pursue if the summary judgment is reversed. Well, the damage would be the, what breached by the Union, by the International. Permitting. If they settled with the local, it was the instrumentality that was causing the. Yes, and I reviewed the settlement agreement this morning, and it distinctly does not release the principles of the locals who settled. The same damage claims that were released as to the locals were not released as to the International. So they exist, you know, there may be an offset. How would they be different? I mean, why wouldn't the settlement include the, whatever damage was incurred? Because, well. What other remedy would the International be able to. The damages, the settlement didn't resolve the damage claims one way or the other. It was a settlement with no admission of fault. I don't think anyone would be in a position to suggest that the plaintiffs received any compensation under the settlement agreement that would reduce their damage claims against the International. So it's the damage. If the Court reverses, number one, the cost award would go away, and number two, the plaintiffs would be able to pursue their damage claims. Whether they would as a practical matter, I don't know. But that's what we're seeking. What would you say about Hammonds, that Sixth Circuit case? I'm sorry, did you have more to say in response to that? No, Your Honor, and I do not have a comment on Hammonds at the moment. The Fifth Circuit, I'm sorry. I'm sorry. I don't have a comment to make on it at the moment. It looks like it's bad for you. It is bad for us. But, you know, it's the Sixth Circuit, and I don't think it specifically addresses our circumstances. I see that I have less than two minutes remaining. May I reserve them for a short reply? Thank you, counsel. Good morning, Your Honors. I'm Beth Ross, and I have the privilege of representing the International Longshoremen and Warehousemen's Union in front of this Court. I think I would like to start by answering Judge Godwin's question, what's left if this case were remanded? Goodwin. I think that the most serious problem with this case, apart from the fact that the plaintiffs have failed utterly to address the legal standards respecting the liability of an international union for the alleged bad acts of its autonomous local affiliates, is that in this case, plaintiffs' entire appeal, stanza or falls, and the whole purpose of being here, stanza or falls, on the question of whether there were valid substantive claims asserted against all defendants on the merits. And I thought it was really quite interesting that in the plaintiffs' case Hold on. You're talking real generally, and I'm trying to think more concretely, so help me on my problem. Here's my problem. Okay. Go ahead. Let's assume we get to the merits past the 54B issue, because the judge's 54B certification was defective. It didn't have that sentence it needs. Okay. We'll skip over that. Let's skip over that. Well, let me ask you about that. You could have just sent them another form saying, Judge, would you please sign this form that has the sentence you need, right? Yeah, we could have. Okay. Let's get to the fair representation. Your adversary makes kind of a neat logical argument. He says, when you look at the definition on page one of the contract, it says the international is hereafter the union. And then when you look at 843, it says no favoritism or discrimination in hiring or dispatching. That leaves aside whether you should use 8 or 9, but let's assume for the moment. And then you look at 17, and it says that the labor relations committees are three designated by the union, and three designated by the employers. We know from page one the union's the international. That's her logical argument from the contract. If it's wrong, say why. Okay. What's wrong with the argument is that it ignores the Supreme Court's decision in carbon fuel, which talks about, which in my view is dispositive of this case, which explains that to hold an international union liable for alleged misconduct of its local affiliates, even in circumstances where the international union is the signatory to a master collective bargaining agreement, which is the case here, common law agency must be established between the international and the local affiliate. And in carbon fuel and cases following it, including most recently the lawn case, I think I'm pronouncing that correctly, issued by this court, is that in determining whether a common law agency relationship exists, the governing documents that define the relationship between the international and the local, whether that be the international constitution or a master collective bargaining agreement, as was discussed at length in carbon fuel, to the party's actual practice. In actual practice under this contract, the operative language in section one of the collective bargaining agreement is that, says that the international enters into the agreement by and on behalf of itself and its local affiliates. As a matter of practice, it was undisputed in this case, as in many others, that the international union does not serve on direct or control in any fashion the conduct of the joint port labor relations committees that administer and enforce the contract at the local level. This is an international union that covers, and a contract that covers, every west coast port from San Diego to Seattle. That's a lot of ports and a lot of people. But the plaintiff's argument is really pretty straightforward. Here's the contract. Your client is responsible for it. They're the signatory to the contract. I don't see that carbon fuels really helps you very much. You're talking about a wildcat strike there, and the question as to whether the international is responsible for a local that's gone out on a wildcat strike. That's a little different from a situation in which the international has said to the locals, we're going to give you responsibility for appointing all the people. Go and do good work. Well, I think, Judge Bybee, that the answer to your question is that carbon fuel really does address the very same situation we have here. The second part of carbon fuel, in Part B of the opinion, the Supreme Court talks about and addresses and rejects the argument of the employers that the international union could be held liable for the wildcat strikes engaged in by the locals by virtue of language in the contract that required the international to ensure, to maintain the integrity of this contract. So in carbon fuel, what the Supreme Court was saying is, if there's language in a master agreement that imposes supervisory authority to some degree on the international to supervise the affairs of the local entities, that by itself is not enough without evidence, and there is no evidence of this character in this case, that the international union instigates, condones, participates in, ratifies the conduct of the local actors. I'm trying to translate the general to the case. If I apply lawn, is what you're saying that if I apply lawn correctly, then I look not merely to the documents, but to the actual relationship and practice, and when I look at that, the local does everything? That's right. In lawn, on page, this lawn doesn't give you the pages very well, but in the section discussing agency, in lawn, the circuit held, in determining the existence of an agency relationship, the terms of the international's constitution may be instructive, and in that case, the international constitution was important because it was the document that defined the scope of the relationship between the international and the local. But that's a vertical contract between the international and the local, which you don't have here. I don't mean to cut you off, are you? You have a contract here between the international and the Pacific Maritime Association, so you have a contract between the employer and the union saying, this is the way that we're going to arrange our relationship, and it doesn't say anything about the relationship between the international and the local. Well, it does in section one, your honor, by saying that the contract is entered into by and on behalf of the international. Same question I put to Ms. Lasher, did the local have any rights to enforce this contract? The local had rights to enforce this contract. Even though it's not a formal signatory? Absolutely, and the undisputed evidence in this case is that the local had the exclusive authority sitting as the union representative on the joint port LRC to administer and enforce this contract, which extended to the grievances that the plaintiff's claim were filed in this case, which in fact the record shows were never even presented to Local 13. Same question I put to, I think I put this to Ms. Lasher as well. Do you have, why don't you have joint several liability here? This is her point, okay, irrespective of anything that the local may have done and that everybody understood the local was going to do, it remains the fact that the international is the signatory to the contract and they're ultimately responsible for everything that happens. So they're the sort of the guarantor of everything under this contract. Well, let me answer your question this way, and if I stray from the reservation and you feel like I'm going off point, please redirect me and tell me I'm not answering your question. I think the problem is this, here the plaintiffs have changed their theory of the international's liability five different times. In their complaint, the assertion was that the union defendants, Local 13 and the international failed to process grievances. That's what the complaint said, and I can cite you to the paragraphs if you'd like. Then, at the summary judgment stage, the plaintiffs said that, and they said, well, and there may be some independent duty of fair representation on the part of the international arising from the contract to do something else under the contract. Then, in the brief that was filed on appeal, in the opening brief, the theory that was being pursued by the plaintiffs was that the international had an independent duty of fair representation to the plaintiffs, in this case, arising from the terms of the contract because of the way that the contract defined the relationship between the international and the locals. In its reply brief, to my amazement, the plaintiffs abandoned that theory altogether and said that what is not at issue in this case is whether the international can be held liable for the alleged failure of its autonomous Southern California affiliate, Local 13, to process grievances, so that really answers the is there joint and several liability here. In their reply brief, plaintiffs said, no, that's not the theory we're pursuing, and they also said in their reply brief that the international, that they are not claiming the international instigated, participated in, condoned, ratified, or had any part in Local 13's alleged breach. Instead, what they asserted in the reply brief, and this really floored me when I was preparing for the argument last night, that the international, in essence, breached a contractual duty to have international personnel sitting on the JPLRC to make sure that any grievances that crossed the desk of the JPLRC were processed. Well, that wasn't the theory of the case that the international was presented with in the complaint. It's not how the case was litigated. There was no opportunity for the international to develop a record on the more, to the more, a more developed record. You just quoted a provocative paragraph on the reply brief. Would you give me the page? Yes. Okay, we're stuck. There we go. Page four. It's at page, it's at page, it starts at page four, go on to page five. What they say is, actually it's on page six, on page five the appellants say, the ILW's brief obfuscates, what the ILW brief obfuscates is the PCLCD imposed on the ILW an independent duty of fair representation regarding plaintiff's complaints, which are completely abandoned, specifically that the PCLCD, one, provides at section 1711 for the ILW to designate representatives to the JPLRC, I'm not reading every word, and two, makes the ILW jointly responsible with the PMA for implementing the contractual anti-discrimination provisions of section 13. Why isn't that right? Well, it is correct. What I'm thinking of is, suppose by analogy, you have an agreement between a corporation and a bunch of individuals who are acting collectively in some way, retailers association or whatever, to do something, and then the corporation forms a subsidiary that does all of the actual dealings with the retailers, it seems to me that if the corporation had the contract with the retailers, say it's a manufacturing corporation, then regardless of whatever rights may exist between the corporation and the subsidiary it formed to do the work with the retailers, the corporation has still signed on for the responsibility to the retailers. I don't see quite why, under the terms of your own argument, the international here is not in the same position as, say, that corporation that formed the sub. I think the difference here, and it's a really important difference between how corporations are organized and function and how labor unions are organized and function, is that the international union here, in negotiating a master collective bargaining agreement covering 10,000 workers in ports from San Diego to Seattle, serves... That actually seems to me to hurt your case, since the ports run from San Diego to Seattle, there are several locals involved, so the international must contemplate a larger role than it would play in a purely local matter. Well, I think if I could finish, in this contract the international serves as the collective bargaining agent for its principals, the local unions on whose behalf the agreement is negotiated and signed. As a matter of practice, long-standing practice, and undisputed in this record, it is the local unions who are the principals on whose behalf the contract is negotiated and executed... Is there a document that says that? Well, I think you get that out of Section 1 of the agreement, and I think that the law, carbon fuel, lawn, Hammonds, security farms, Moore, Fristow, the whole unbroken line of Ninth Circuit authority and other cases from other circuits, that an international union in these circumstances can be held responsible for the acts of a local carrying out the terms of a master contract, only if common law agency principals... The legal test is satisfied, and here that's not the case. Do we have in the file the, whatever paper there is that establishes the relationship between the international and the locals? Absolutely, the international... The international constitution is attached as an exhibit to the declaration of Bob McElrath, which, give me one second, is, appears in the record at, the respondent's supplemental excerpts of record, tab 47, at exhibit A, the full international constitution is set forth there, and in the McElrath declaration... Does the constitution say anything that bears on this? Well, the constitution says quite clearly and unequivocally that the local unions are autonomous local affiliates with full authority to carry out their affairs as they see fit without intervention or interference by the international, and it is undisputed in this document, the separate statement of undisputed facts, it was undisputed that the international plays no role whatsoever and has no, in the joint part LRCs, and that the exclusive responsibility for enforcing and administering this contract at the local level sits with the local union affiliate that sits on that committee. I did want to answer Judge Godwin's question, though, about what's left and, you know, if this case were to be remanded, you know, where would we be? The claims that the plaintiffs asserted on the merits are terrible claims, and if the PMA and the local 13 were still here, and now I get to stand in their shoes, I'd really like the court to kind of remember that there are two parts to this appeal. There's this very interesting question about international liability for the acts of its local union affiliate, and then there's the question of, do you ever even need to reach that question, because the claims themselves are terrible claims, and Judge DeVriesen granted some re-judgment for very good reason. There was, one of the claims was that there was race discrimination in the clerk selections, and that claim was asserted by two of the 11 plaintiffs, Battle and Barlow, and the evidence to support that claim was Battle's belief that she had been treated unfairly because she's African-American, and her belief that there were not sufficient numbers of African-American applicants who were selected. There was no applicant pool data submitted to the court, there was no selection data, and Judge DeVriesen said, your belief that the bottom line number wasn't enough doesn't get you there. The favoritism claim was premised on speculation and belief by the various of the other plaintiffs to the effect that members, that those selected had some family connections with union affiliates and union officers and others on the waterfront. Well, it was the PMA who made the selections, so I don't see where there was any valid claim of nepotism. So it may be that we never get there. So all the favoritism plaintiffs were employer picks, not union picks? Yes, the union selections under this contract, I see I have 20 seconds left, all go by seniority. So the union makes no selections whatsoever. This whole case was about how the employers picked their 50% of the transfers from the long short of the marine clerk registration list. And there was no evidence of this record, and it was undisputed, I'm out of time, but I'll finish my sentence, that the union played any role in selecting those applicants. So with that, I thank the panel for a very interesting argument, and we'll submit. Thank you, counsel. Just one thing, your honors. I don't see anything in the international constitution, taking a quick look at it now, that addresses the question of how it is that the international can enter a contract, assume a duty itself, delegate it to the union, and then say, we're not responsible for anything to the local, and then say, we're not responsible for what the local does or doesn't do. With respect to the merits of the discrimination claims themselves, I'm going to stand on what's at pages 23 and 25. Why would the international have any vicarious liability with respect to the employer picks? Because it made a contract with the employer, it entered a contract to protect its workers, with the employer saying, there shall not be any of these discrimination favoritism, and then it permitted picks to be made in that way. Even employers can't exercise discrimination in picks, and the one reason that people... What should the union have done? Should have said, you can't do that. I realize we then come back to, how is the international going to know about it? Even if the international had been right there on the spot and had said, you can't do that, can they stop it? I think they can. I think they say, we object to this, the employers are acting in a discriminatory way. On behalf of our employees, we object to discrimination. If they looked at all their lawn chair workers and they said, in our hiring hall we have... Then the union would have to do what? File a lawsuit? Perhaps. Negotiate, perhaps. Is all this duty of fair representation come down to the fact that you had to file your own lawsuit instead of having the union file the lawsuit for you? We did. We did have to. The problem for these employees is they didn't just file this lawsuit against the international. We're at the point where it looks like that now. But they filed against the employer and the locals and the international, saying... Well, they did the right thing. They sued everybody. They sued everybody. They were able to settle two-thirds of the case. We're here with what remains. We were unable to settle the rest of the case. I have a group of clients who, by having done the right thing by suing everyone, are stuck owing money to one part of everyone, which they feel they legally are not obligated, they legally don't owe because they were not fairly represented. If the court has no further questions, I'll submit. Thank you, counsel. Allen v. Pacific Maritime is submitted. I'll hear Guggenheim v. City of Goleta.
judges: Goodwin, Kleinfeld, Bybee